CLAIBORNE, BOOTHE & Co., v. C. M. STEWART, et al., and Consolidated Causes.

ATTACHMENT. *Priorities.* Attaching creditors having abandoned their attachment, there can be no priorities among them. The funds arising from the sale of the attached property must be divided *pro rata* among the creditors, and those creditors who have purchased the property can be allowed the *pro rata* on their purchase notes.

FROM DAVIDSON.

Appeal from the Chancery Court. E. H. EAST, Chancellor.

No record of this case can be found.

FREEMAN, J., delivered the opinion of the Court.

In 1859, Claiborne, Boothe & Co., with numerous other creditors of C. M. Stewart, filled their attachment bills at sundry times, charging, among other things, that C. M. Stewart was indebted to them, and had made a fraudulent conveyance of a certain small tract of land, in or near Nashville, to his mother, Mary Carter, and praying that said conveyance be declared void, and the property sold for the payment of their debts. Mrs. Carter owned before this purchase, it seems, a portion of the same land. These bills were all answered, and some proof taken, when Mary Carter's death was suggested. After this M. M.

Bryan, and others, in his own right, and as partner, filed a bill as creditors of said Mary Carter, stating the fact of the death of Mrs. Carter, the mother; that she had left a will, giving all her property to C. M. Stewart, except one acre of the land to his wife; that the will had been proven, but C. M. Stewart, the executor, had refused to accept the trust, and no one could be procured to administer, more than six months having elapsed since her death; praying for the appointment of an administrator, and for administration in the Chancery Court.    James W. Bryan was appointed administrator with the will annexed, under the proceeding, all the cases were ultimately consolidated, and to be heard together.

At November Term, 1865, a decree was made by consent of all parties, in which it was admitted that the claims against C. M. Stewart were just debts; that the administrator had no personal assets to pay debts, and that the lands ought to be sold, both that of Mary Carter and that sought to be reached as the property of Stewart.    It was then ordered that the land be sold on a credit, taking notes, with security, for the payment of the purchase money; an account was ordered of all the debts due by Mrs. Carter, and also the claims of complainants in the attachment bills, and their priorities.    It was further ordered, that all other creditors of Mary Carter should be allowed to come in and prove their claims.    Under this decree a sale was ultimately made of the land in various lots, at which it seems H. S. French, one of the attaching

creditors, purchased a portion of the lots for a sum less than his debt, and ultimately gave his notes for the purchase money to the Clerk and Master.

The Clerk reported that as no decree had been made settling the rights of parties, he could not determine the priorities of the parties—but that if the land was sold as the property of C. M. Stewart, that is, the land conveyed by him to his mother, and that conveyance declared void, than the priorities would be according to date of filing the bills; but if this sale held good, then it would all be the property of Mrs. Carter, and be subject to her debts first, and these debts could not be ascertained until the administration was settled up.

By a subsequent decree of November, 1869, it is recited that it appeared to the Court that the various creditors had abandoned their attachments, and accepted the trust fund or property of Mrs. Carter, to pay the debts of C. M. Stewart; it was, therefore, decreed that after paying the debts of Mrs. Carter, to wit: the Bryan debts, and any other debts, the remainder of the funds arising from the sale of the property should be divided *pro rata* among all the creditors of C. M. Stewart.

After this a judgment, or judgments rather, were taken against French in favor of the Clerk and Master on his notes for the purchase money. Thereupon he filed a petition superseding or enjoining the executions on said judgments, and insisting he should not be compelled to pay his notes, but should have a credit on

Claiborne *v.* Stewart.

his debts for the amount.    On final hearing the Chancellor dismissed the petition, and directed that so much of the purchase money for land be collected as might be necessary to pay the debts of Mary Carter, and the balance, *pro rata,* appropriated to the other debts. From this last decree French alone appealed to this Court.

The Chancellor's decree was correct, and is affirmed, and the case remanded for such further proceedings as may be necessary to carry out the same.    The attachments being abandoned, there can be no priorities, except as to Mrs. Carter's debts, which must first be paid, and the balance of the funds arising from the sale divided *pro rata* among the various creditors, and after collecting enough to pay her debts from the proceeds of the sale, the *pro rata* then due can be allowed on notes of creditors who have purchased property.

French will pay the costs of this Court and of his petition in the Court below, the Chancellor disposing of the balance of costs on final decree.

Affirmed.